1

2

3

4

5            UNITED STATES DISTRICT COURT

6            EASTERN DISTRICT OF WASHINGTON

7    BILLY D.,
                                        NO. 2:18-CV-0015-TOR
8                    Plaintiff,
                                        ORDER GRANTING DEFENDANT'S
9        v.                             MOTION FOR SUMMARY
                                        JUDGMENT
10   COMMISSIONER OF SOCIAL
     SECURITY,
11
                     Defendant.
12

13       BEFORE THE COURT are the parties' cross-motions for summary judgment.

14   ECF Nos. 14; 15.  These matters were submitted for consideration without oral

15   argument.  The Court has reviewed the administrative record and the parties'

16   completed briefing, and is fully informed.  For the reasons discussed below, Plaintiff's

17   Motion for Summary Judgment (ECF No. 14) is **DENIED** and Defendant's Motion

18   for Summary Judgment (ECF No. 15) is **GRANTED**.

19   //

20   //

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g),

1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is

limited: the Commissioner's decision will be disturbed "only if it is not supported by

substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158-

59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means

relevant evidence that "a reasonable mind might accept as adequate to support a

conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently,

substantial evidence equates to "more than a mere scintilla[,] but less than a

preponderance." *Id.* (quotation and citation omitted). In determining whether this

standard has been satisfied, a reviewing court must consider the entire record as a

whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner. If the evidence in the record "is susceptible

to more than one rational interpretation, [the court] must uphold the ALJ's findings if

they are supported by inferences reasonably drawn from the record." *Molina v.*

*Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not

reverse an ALJ's decision on account of an error that is harmless." *Id.* at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is

engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c); 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work activities on a

sustained basis despite his or her limitations (20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1222 (9th Cir. 2009). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the

claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 CFR §§ 404.1560(c); 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ FINDINGS

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income on May 16, 2013. Tr. 20. Plaintiff's claims were denied initially and upon reconsideration. *Id.* Plaintiff requested a hearing before an ALJ and he initially appeared on February 13, 2015. *Id.* The hearing was continued so the evidence could be updated and also because of concerns that Plaintiff may have been under the influence of alcohol. *Id.* The hearing was rescheduled for June 26, 2015, but it was continued because Plaintiff's representative was unavailable. *Id.* Plaintiff appeared telephonically from prison and testified at a hearing on July 28, 2016. *Id.* While Plaintiff alleged an earlier onset date, the period at issue begins the day after the last determination became administratively final, which is July 23, 2010. *Id.* On August 24, 2016, the ALJ rendered a decision finding Plaintiff was not disabled. Tr. 32.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 23, 2010. Tr. 23. At step two, the ALJ found that Plaintiff had the following severe impairments: "schizophrenia; personality disorder; affective disorder; substance addiction disorder; degenerative disc disease; and obesity." *Id.*

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. Tr. 23-24.

The ALJ then concluded that Plaintiff had the RFC to perform light work including the ability to do the following:

> He can occasionally climb ramps, stairs . . . ladders, ropes, and scaffold. He can occasionally stoop. He is capable of performing unskilled work with customary breaks and lunch. He is capable of understanding short and simple instructions. He is able to maintain his concentration and pace for routine tasks, and carrying out short, simple instructions. He is capable of having superficial (5 minutes or less) contact with coworkers and the public. There should be an emphasis on occupations/duties dealing with things/objects rather than people. There can be occasional, simple changes to the work environment. He can never perform at a production rate pace, e.g., assembly line work where the pace is mechanically controlled. He can perform goal-oriented work, e.g., office cleaner, where the worker is more in control of the pace. He will be off-task about 10% over the course of an 8-hour workday.

Tr. 25. At step four, the ALJ did not find any past relevant work and thus, no work to which Plaintiff could return. Tr. 30. At step five, based on the testimony of a vocational expert and in consideration of Plaintiff's age, education, work experience, and RFC, the ALJ concluded Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, such as housekeeper, price marker and laundry worker. Tr. 31. Accordingly, the ALJ found Plaintiff not disabled as defined in the Social Security Act. Tr. 31-32.

The Appeals Council denied Plaintiff's request for review on November 17, 2017, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. Tr. 1-6; 20 C.F.R. §§ 404.981, 416.1484, and 422.210.

## ISSUES

Plaintiff raises two issues for review:

1. Whether the ALJ failed to properly assess the medical opinion evidence.

2. Whether the ALJ erred by improperly discrediting Plaintiff without specific, clear, and convincing reasons.

ECF No. 14 at 2. The Court evaluates each issue in turn.

## DISCUSSION

**1. Medical Opinion Evidence**

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, the opinion of a treating physician carries more weight than the opinion of an examining physician, and the opinion of an examining physician carries more weight than the opinion of a reviewing physician. *Id.* at 1202. In addition, the Commissioner's regulations give more weight to opinions supported by reasoned explanations than to

opinions that are not, and to the opinions of specialists on matters relating to their area of expertise over the opinions of non-specialists. *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester*, 81 F.3d at 830-31). Regardless of the source, an ALJ need not accept a physician's opinion that is "brief, conclusory, and inadequately supported by clinical findings." *Bray*, 554 F.3d at 1228 (quotation and citation omitted).

"If there is 'substantial evidence' in the record contradicting the opinion of the treating physician, the opinion of the treating physician is no longer entitled to 'controlling weight.'" *Orn v. Astrue*, 495 F.3d 625, 632 (quoting 20 C.F.R. § 404.1527(d)(2)). "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)).

### A. Jeremiah Crank, M.D.

The ALJ gave little weight to the treating physician opinion of Dr. Crank from February 2013 that Plaintiff's back pain was disabling. Tr. 29. The ALJ determined that this opinion conflicts with Plaintiff's own treatment records. Tr. 29, 958 (Ex. 14F). The ALJ noted that Dr. Crank stated that a substantial amount of additional evidence was needed, such as an MRI and a possible consultation exam. Tr. 29, 968-69. The ALJ found that this additional evidence suggests that Dr. Crank made an educated guess as to what Plaintiff's physical RFC was in February 2013. Tr. 29. The ALJ emphasized that Dr. Crank does not explain how his finding of mild lumbar spine pain translates into a need for epidural steroid injections, consultation with a pain specialist, and possible decompression surgery. Tr. 29, 969.

The ALJ stated that Dr. Crank appears to have relied more on what Plaintiff told him as opposed to what the objective testing and clinical observations actually showed. Tr. 29. In the range of motion ("ROM") charts that Dr. Crank attached to his "check-box opinion," the lower back extension/flexion testing were limited but the lateral left/right flexion involving the lower back was normal. Tr. 29, 970-71. The ALJ found that Dr. Crank did not adequately explain how Plaintiff could be physically disabled from the lower back pain, let alone justify his recommendation for invasive care of decompression surgery, based on this ROM testing alone. Tr. 29. The ALJ stated that the ROM at most shows that degenerative disc disease is a severe

impairment. *Id.* The ALJ additionally noted that x-rays of the lumbar spine taken in May 2013 show only mild degenerative changes at L1-L2, L4-L5, and L5-S1, along with a mild anterior wedge compression deformity of L1 of an indeterminate age. Tr. 29, 978 (Ex. 15F).

The ALJ also gave little weight to Dr. Cranks' opinion from December 2014 because Dr. Crank opines that Plaintiff is disabled due to degenerative disc disease despite the objective evidence. Tr. 29, 1126-28 (Ex. 19F). The ALJ found that Dr. Crank's opinion was vague in that "possible" epidural steroid injections and/or decompression surgery might be needed. Tr. 29, 1128. The ALJ noted that while ROM testing was slightly worse at certain degrees for the lower back and left/right lateral flexion testing, Dr. Crank again did not adequately support his opinion. Tr. 29-30, 1129. The ALJ emphasized that Dr. Crank relied heavily on what Plaintiff told him in opining that he is physically disabled. Tr. 30, 1131. Dr. Crank also mentions the 2013 mild x-ray findings, "but does not explain how they result in his opinion how degenerative disc disease could be disabling." Tr. 30, 1133.

First, Plaintiff argues that the ALJ harmfully erred by failing to weigh the appropriate factors to determine to what extent a treating physician's opinion should be owed, such as the whether there is a treating relationship, the length of the relationship, frequency of exams, the nature and extent of the relationship, and other such factors. ECF Nos. 14 at 7; 16 at 2-3. Second, Plaintiff insists that the ALJ

improperly gave Dr. Crank's opinions less weight on the basis that they conflicted with his treatment records and were the result of Plaintiff's subjective testimony. ECF Nos. 14 at 8; 16 at 3-4. Third, Plaintiff alleges that the ALJ improperly found Dr. Crank had not adequately supported his opinions. ECF Nos. 14 at 10; 16 at 4-5.

In regards to self-reporting, "[a] physician's opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (citation omitted). This Court determines that the ALJ properly found it persuasive that Dr. Crank's opinion was in part based on Plaintiff's self-reporting. While self-reporting is a mere consideration and does not solely justify rejection of a treating physician's opinion, the Court finds that the ALJ did not err in considering this evidence in his rejection of Dr. Crank's opinion.

The ALJ not only based his opinion on Plaintiff's self-reporting, but also conflicting treatment notes and Dr. Crank's failure to adequately explain his opinion. Tr. 29-30. The Court finds that the ALJ properly evaluated conflicting treatment notes, which includes Dr. Crank's own treatment records from May 2013 finding a mild tenderness to palpitation; a mild straight leg test on one side; and normal strength, sensation, and range of motion in the left leg. Tr. 29, 958; ECF No. 15 at 11. Dr. Crank's failure to adequately explain his findings is also persuasive where he fails

to explain how Plaintiff could be physically disabled from lower back pain and recommend invasive surgery based on the ROM test where the lower back flexion was normal. Tr. 29, 970-71, 1133.

The ALJ acknowledged Dr. Crank as a treating physician, but did not specifically consider the length and extent of the treating relationship. Tr. 29. In interpreting the evidence and developing the medical record in a written determination, an ALJ is not required to "discuss every piece of evidence." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (citation omitted). Rather, an ALJ "must explain why 'significant probative evidence has been rejected.'" *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (citation omitted). While the nature of the treating relationship is relevant, it does not amount to reversible error when the ALJ extensively considered Dr. Crank's opinions, providing detailed and substantial evidence regarding why he gave little weight to the opinions.

The Court is also not persuaded that merely because the Commissioner did not specifically argue that the ALJ did not err in assessing Dr. Crank's December 2014 opinion, the Court should credit the 2014 opinion as true and remand for benefits. ECF No. 16 at 2. The Commissioner's argument encompassed the 2013 and 2014 opinions, citing to both parts of the record. *See* ECF No. 15 at 10-14.

1    Accordingly, the Court finds that the ALJ did not err in giving the opinion of

2    Dr. Crank less weight. While Dr. Crank's opinion is controlling as a treating

3    physician, the ALJ analyzed substantial evidence contradicting the opinion. The ALJ

4    properly took under consideration Plaintiff's self-reporting. The ALJ also

5    summarized and analyzed conflicting treatment notes. The Court determines that

6    Plaintiff fails to establish that the ALJ erred in giving less weight to Dr. Crank's

7    opinion.

8    **B. Aaron R. Burdge, Ph.D.**

9        The ALJ gave little weight the opinion of consultative physician Dr. Burdge

10   from February 2013. Dr. Burdge stated that Plaintiff's GAF score is 45 and that he

11   has marked mental limitations with maintaining a regular schedule or appropriate

12   behavior in a work-setting. Tr. 28, 926-30 (Ex. 13F). The ALJ found that this

13   opinion conflicts with Plaintiff's exam results and evidence from the period at issue.

14   Tr. 28, 801 (Ex. 9F), 828 (Ex. 11F), 887 (Ex. 12F). The ALJ was less persuaded by

15   Dr. Burdge's opinion because "the only independent evidence he reviewed was a

16   psychological evaluation that was already addressed in the latest prior determination

17   that is administratively final and not being reopened." Tr. 28, 925. The ALJ noted

18   that Dr. Burdge appeared to rely heavily on Plaintiff's subjective reports of symptoms

19   instead of his own objective findings. Tr. 28, 925. The ALJ found that Dr. Burdge's

20   statements frequently conflicted with the evidence, such as Plaintiff's history of

malingering which Dr. Burdge did not adequately consider when assessing Plaintiff's mental RFC.  Tr. 28.

First, Plaintiff argues that the ALJ failed to consider all the appropriate factors to determine to what extent Dr. Burdge should be credited, such as whether this was an examining physician who met with and examined Plaintiff, consistency, and other factors.  ECF Nos. 14 at 12; 16 at 5-6.  Second, Plaintiff insists that the ALJ improperly made the conclusory finding that Dr. Burdge's opinion conflicts with his own exam and with other evidence, arguing that the ALJ cited to no specific inconsistent evidence.  ECF Nos. 14 at 13; 16 at 6.  Third, Plaintiff contends that the ALJ improperly gave Dr. Burdge's opinion less weight for having relied heavily on Plaintiff's subjective report instead of objective findings.  ECF Nos. 14 at 14; 16 at 6-7.  Fourth, Plaintiff alleges that the ALJ improperly gave less weight to the opinion because Dr. Burdge only reviewed one prior evaluation.  ECF No. 14 at 14-15.  Fifth, Plaintiff states that the ALJ improperly gave less weight because Dr. Burdge did not appear to have adequately considered malingering.  ECF Nos. 14 at 15; 16 at 7.  Plaintiff contends that if Dr. Burdge did not consider malingering, it suggests that the diagnosis did not adequately present itself.  ECF No. 14 at 15.

As already noted above, self-reporting is a persuasive consideration.  Yet, this rule "does not apply in the same manner to opinions regarding mental illness." *Buck*, 869 F.3d at 1049.  The Ninth Circuit found that a psychiatrist's partial reliance on the

plaintiff's self-reported symptoms was not a reason to reject his opinion.  *Id.*  Yet, self-reporting is still a consideration even though it may not solely justify rejection of a treating psychiatrist's opinion.

This Court again determines the ALJ properly considered that Dr. Burdge's opinion was based on Plaintiff's self-reporting rather than objective evidence.  The Court finds that the ALJ did not err in considering this evidence as part of his rejection of Dr. Burdge's opinion.  The ALJ also based his opinion on conflicting treatment notes and that Dr. Burdge based his opinion on only one psychological evaluation that was already addressed in the latest prior determination.  Tr. 28.

"[T]he more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."  20 C.F.R. § 416.927(c)(4).  The ALJ then properly gave Dr. Burdge's medical opinion less weight because the opinion conflicted with the record and his own mental health exam.  The ALJ cited to various medical records conflicting with Dr. Burdge's opinion.  *See* Tr. 28.  In 2010, Plaintiff was found to have antisocial personality disorder, but he was able to focus, answer relevant questions, spell the word "world" forwards and backwards, and was able to abstract simple proverbs.  Tr. 801 (Ex. 9F).  Plaintiff denied suicidal thoughts.  *Id.*  In 2011, Plaintiff's speech was normal, and his thought processes were organized and goal directed.  Tr. 828 (Ex. 11F).  He claimed to have hallucinations, but it appeared from his description "as if he was just alone, isolated in the cell and just talking out

loud." *Id.* He showed no evidence of hallucinations during the interview. *Id.*
Plaintiff again denied suicidal thoughts. *Id.* He was able to converse with no
evidence of memory problems, but had difficulty abstracting simple proverbs and his
insight and judgment were poor. *Id.* In 2012, Plaintiff was well-spoken, his mood
was euthymic, his affect was full and appropriate for the occasion, and his thought
process was progressive and goal-oriented. Tr. 887 (Ex. 12F). His thought content
did not appear to contain hallucinations or delusions. *Id.* Plaintiff denied suicidal
thoughts. *Id.*

Additionally, the ALJ noted that Dr. Burdge's own findings showed normal
motor activity and frequently made eye contact. Tr. 27, 929-30 (Ex. 13F). Plaintiff
was cooperative and friendly, but aloof. Tr. 27, 929. Plaintiff appeared distractible,
but was able to complete the exam. Tr. 27, 929. He appeared to be functioning in the
normal range of intelligence. Tr. 27, 929. His thought processes, content, orientation,
abstract thinking, and insight/judgment were all normal. Tr. 27, 929-30. Plaintiff was
able to remember three out of three words immediately on memory testing, and three
out of three words after a five minute delay with cues. Tr. 27, 929. Dr. Burdge found
no indication that Plaintiff was responding to internal stimuli to suggest
hallucinations. Tr. 27, 929. Plaintiff was also able to successfully complete a simple,
three-step command. Tr. 27, 930.

The ALJ also cited that Plaintiff had a history of malingering, which Dr. Burdge failed to consider. Tr. 28, 914 (Ex. 12F). In March 2010, psychological testing showed a strong possibility that Plaintiff may have "exaggerated particular negative symptoms in order to appear more disturbed or depressed." Tr. 914. "[T]he empirically-driven malingering index is also elevated," which is highly unusual. *Id.* Plaintiff appeared to over report his symptoms and had an elevated suggestibility score which was highly suggestive of malingering. *Id.* The report concluded that Plaintiff "may not be as mentally ill as he is attempting to portray himself." *Id.*

The ALJ gave clear and convincing reasons supported by substantial evidence for rejecting Dr. Burdge's opinion. *See Bayliss*, 427 F.3d at 1216. The ALJ noted that Dr. Burdge's opinion was consultative in nature. Tr. 28. Dr. Burdge is then not a treating physician and his opinion carries less weight as an examining physician. *Holohan*, 246 F.3d at 1202. The ALJ sufficiently summarized and analyzed conflicting treatment notes. The ALJ also properly took under consideration Plaintiff's self-reporting, that Dr. Burdge only reviewed one psychological evaluation, and evidence of malingering. The Court determines that Plaintiff fails to establish that the ALJ erred in giving less weight to Dr. Burdge's opinion.

**C. Russell Anderson, MSW; Dr. Rodenberger, M.D.; W. Timm Fredrickson, Ph.D.; and Thomas Johnson, M.D.**

The ALJ noted that "[a]lthough earlier evidence is in the record, it has already

been addressed in the prior determinations that are administratively final and not being reopened." Tr. 30. This earlier evidence includes the functional assessment in May 2010 completed by Mr. Anderson and possibly adopted by Dr. Rodenberger. Tr. 30, 561 (Ex. 16F); ECF No. 15 at 20. In March 2009, Dr. Fredrickson completed an evaluation regarding competency to stand trial. Tr. 693-96 (Ex. 7F). In October 2009, Dr. Johnson completed a similar evaluation. Tr. 681-92 (Ex. 7F). These evaluations are included in the ALJ's prior evidence that he declined to consider. Tr. 30.

Plaintiff alleges that the ALJ needed well-supported, specific, and legitimate reasons not to give these opinions controlling weight. ECF No. 14 at 17. Plaintiff argues that fully crediting their opinions would compel disability, making the ALJ's decision harmful error. ECF Nos. 14 at 17-18; 16 at 8. The Commissioner responds that medical opinions that predate the alleged onset of disability are of limited relevance. ECF No. 15 at 19. The Commissioner asserts that the ALJ specifically cited the evidence, but reasonably chose not to rely on it. *Id.* Plaintiff replies that the Commissioner's argument does not explain why the ALJ would then still consider a March 2010 finding or reference testing from this same period. ECF No. 16 at 8; Tr. 27, 29.

As previously discussed, an ALJ is not required to "discuss every piece of evidence," but must explain why significant probative evidence was rejected.

*Howard*, 341 F.3d at 1012; *Vincent*, 739 F.2d at 1395. "[M]edical opinions that predate the alleged onset of disability are generally of limited relevance." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008).

The Court finds that the evidence which the ALJ chose not to consider is neither significant nor probative. The Court is not persuaded that the ALJ erred in failing to address these opinions. The opinions are of limited relevance when they occurred prior to the onset date and were already considered in prior final administrative decisions. Accordingly, the Court finds that the ALJ did not err as the opinions are prior to the onset date and are not significant evidence.

### 2. Credibility of Plaintiff

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation and citation omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quotation and citation omitted). "The only time this standard does not

apply is when there is affirmative evidence that the claimant is malingering."

*Carmickle*, 533 F.3d at 1160.

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear and convincing reasons' for the rejection." *Vasquez*, 572 F.3d at 591 (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lester*, 81 F.3d at 834); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.").

In making such a determination, the ALJ may consider: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

Here, Plaintiff first contends that the ALJ improperly discredited Plaintiff on the basis of a history of malingering and perceived motivational issues because a

practitioner did not diagnose malingering.  ECF Nos. 14 at 19, 16 at 9-10.  Second,

Plaintiff argues that the ALJ improperly discredited Plaintiff because his criminal

history acted as a non-disability barrier to employment.  ECF Nos. 14 at 20, 16 at 10.

Plaintiff insists that his felony history was not a noticeable barrier to employment.

ECF Nos. 14 at 20; 16 at 10.  Third, Plaintiff alleges that the ALJ improperly found

Plaintiff's mental objective evidence insufficiently severe.  ECF Nos. 14 at 20, 16 at

10.  Fourth, Plaintiff argues that the ALJ improperly discredited Plaintiff for not

having sufficiently severe physical findings.  ECF Nos. 14 at 20, 16 at 10.  Fifth,

Plaintiff states that the ALJ improperly found Plaintiff improved with treatment to the

point of having "at most mild mental health symptoms."  ECF Nos. 14 at 21, 16 at 11;

Tr. 27.

     The Commissioner responds that the ALJ provided adequate analysis to support

the adverse symptom testimony finding.  ECF No. 15 at 9.  The Commissioner further

argues that because the ALJ assessed limitations in the RFC finding, the ALJ did not

completely reject Plaintiff's complaints, but made a reasoned finding of their effect on

his capabilities.  *Id.* at 10.

     In regards to physical impairments, the ALJ found that Plaintiff's statements

"concerning the intensity, persistence and limiting effects of these symptoms [of back

pain] … are not entirely consistent with the medical evidence and other evidence in

the record …."  Tr. 26.  The ALJ then analyzed the objective medical evidence in the

record regarding Plaintiff's spine and back pain, which was previously discussed above. *Id.*

As to mental impairments, the ALJ extensively considered the objective evidence. Tr. 26-27. The ALJ analyzed an examination in November 2010 where Plaintiff was oriented, had no suicidal ideations, good concentration, ability to spell "world" backwards and forwards, interpreted simple proverbs, and was able to focus and answer relevant questions. Tr. 26, 801 (Ex. 9F). In April 2011, Plaintiff recalled two out of three words after a five minute delay, which was fair. Tr. 26, 828 (Ex. 11F). In April 2012, Plaintiff was well-spoken and had a normal mood. Tr. 26, 887 (Ex. 12F). Plaintiff's thought processes were progressive and goal oriented. Tr. 26-27, 887. He did not appear to have delusions or hallucinations, and he denied any suicidal ideations. Tr. 27, 887. The ALJ also discussed the mental health exam performed by Dr. Burdge in February 2013, as discussed above. Tr. 27.

The ALJ considered evidence of malingering, which was also addressed above. Tr. 27, 914 (Ex. 12F). Additionally, the ALJ found that Plaintiff had an extensive criminal history, which is a non-disability related barrier to finding employment but "does not interfere with his ability to perform simple job tasks with limited social contact and/or interaction." Tr. 27. The ALJ also noted that when Plaintiff "follows treatment recommendations and takes his medication as prescribed, he does well and has at most mild mental health symptoms." Tr. 27, 833 (Ex. 11F). The ALJ

emphasized that Plaintiff was involved in an exercise program in February 2012, attending school for computer basics, and enjoyed doing legal work for other inmates in the prison law library.  Tr. 27, 890 (Ex. 12F).

The Court finds that even if the evidence of malingering discussed above is insufficient to discredit Plaintiff's testimony, the ALJ gave specific, clear, and convincing reasons for not fully crediting Plaintiff.  The ALJ considered Plaintiff's daily activities, inconsistencies in his statements, his treatment record, testimony from physicians, and objective medical evidence concerning the nature, severity, and effect of Plaintiff's mental and physical conditions.

**ACCORDINGLY, IT IS ORDERED:**

    1.  Plaintiff's Motion for Summary Judgment (ECF No. 14) is **DENIED**.

    2.  Defendant's Motion for Summary Judgment (ECF No. 15) is **GRANTED**.

The District Court Executive is directed to enter this Order, enter **JUDGMENT** for Defendant, furnish copies to counsel, and **CLOSE** the file.

    **DATED** August 7, 2018.



           THOMAS O. RICE
      Chief United States District Judge